

**CORPORATION SERVICE COMPANY®**

# Notice of Service of Process

WCE / ALL
Transmittal Number: 15422539
Date Processed: 07/25/2016

| | |
|---|---|
| **Primary Contact:** | Jade Dodds<br>Life Care Centers of America<br>3570 Keith St NW<br>Cleveland, TN 37312 |
| **Copy of transmittal only provided to:** | Joan Thurmond<br>Wendy Ivey<br>Pamela Murray |

| | |
|---|---|
| **Entity:** | Life Care Centers Of America, Inc.<br>Entity ID Number 3083961 |
| **Entity Served:** | Life Care Centers of America, Inc. |
| **Title of Action:** | Mary Deann Kelley-Riddle, as Executor of the Estate of Donnie Eugene Kelley vs. Life Care Centers of America, Inc. |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Wrongful Death |
| **Court/Agency:** | Gwinnett County State Court, Georgia |
| **Case/Reference No:** | 16 C 04249-3 |
| **Jurisdiction Served:** | Georgia |
| **Date Served on CSC:** | 07/22/2016 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| **Sender Information:** | Daniel W. Cotter<br>404-377-5775 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

*CSC is SAS70 Type II certified for its Litigation Management System.*

2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882   |   sop@cscinfo.com



## IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| MARY DEANN KELLEY-RIDDLE, as Executor of the ESTATE OF DONNIE EUGENE KELLEY | ) ) ) ) | |
| Plaintiff, | ) ) | **06 C  04249- 3** |
| v. | ) | CIVIL ACTION |
| LIFE CARE CENTERS OF AMERICA, INC. | ) ) ) | FILE NO. _____ |
| Defendant. | ) ) ) ) | **JURY TRIAL DEMANDED** |

## SUMMONS

TO THE ABOVE NAMED DEFENDANT:

You are hereby summoned and required to file with the Clerk of Said Court and serve upon the Plaintiff's attorneys, whose names and address are:

Daniel W. Cotter, Esq.
Law Offices of Daniel W. Cotter, P.C.
150 E. Ponce de Leon Ave., Suite 225
Decatur, Georgia 30030

Scott E. Gwartney, Esq.
Brooks, Leboeuf, Bennett, Foster & Gwartney, PA
909 East Park Avenue
Tallahassee, FL 32301

an answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

This 20th day of July _____, 2016.

Richard T. Alexander, Jr.
Clerk of State Court

By: _____
      Clerk

FILED IN OFFICE
CLERK STATE COURT
GWINNETT COUNTY, GA

**IN THE STATE COURT OF GWINNETT COUNTY**
**STATE OF GEORGIA**

2016 JUL 20  PM 3: 57

RICHARD ALEXANDER. CLE:

| | |
|---|---|
| MARY DEANN KELLEY-RIDDLE, as Executor of the ESTATE OF DONNIE EUGENE KELLEY | ) ) ) ) |
| | ) |
| Plaintiff, | ) |
| v. | ). |
| | ) |
| LIFE CARE CENTERS OF AMERICA, INC. | ) ) |
| | ) |
| Defendant. | ) ) ) |

CIVIL ACTION **06 C 04249-3**

FILE NO. _____

**JURY TRIAL DEMANDED**

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff, MARY DEANN KELLEY-RIDDLE, as Executor of the

ESTATE OF DONNIE EUGENE KELLEY, and files this Complaint for Damages against the

LIFE CARE CENTERS OF AMERICA, INC. (also referred to as the "Defendant", "the

facility", and or "LIFE CARE CENTER OF GWINNETT") and alleges as follows:

### *Preliminary, Venue, and Jurisdiction Allegations*

1.    Plaintiff, MARY DEANN KELLEY-RIDDLE is the sister of Donnie Eugene

Kelley, Mary Deann Kelley-Riddle brings this action as Executor of the Estate of Donnie

Eugene Kelley, to recover for the wrongful death of her brother, Donnie Eugene Kelley.

Donnie Eugene Kelley passed from this world to the next on March 24, 2015, no surviving

spouse and no children.

2.    Defendant LIFE CARE CENTERS OF AMERICA, INC. is a Tennessee Foreign

Profit Corporation, is or was authorized to transact business in the State of Georgia, and was

upon information and belief, at all times applicable to this Complaint, engaged in the business of

owning, managing, and/or operating the facility known as Life Care Center of Gwinnett during

Donnie Eugene Kelley's residency there.  Life Care Centers of America, Inc. may be served in

Gwinnett County through its registered agent, Corporation Service Company, at 40 Technology

Parkway South, Suite 300, Ben Hill, Norcross, Georgia 30092.

3.     Defendant was engaged in the business of owning, operating, and/or managing

the nursing home facility known as Life Care Center of Gwinnett during Donnie Eugene

Kelley's residency.  Defendant was responsible to the residents of the facility, including Donnie

Eugene Kelley, for the provision of his custodial care and treatment, and the provision of nursing

home services, including, but not limited to, the provisions of residents' rights.

4.     The duties Defendant owed to Donnie Eugene Kelley while he was a resident at

its facility were non-delegable and not only included the duty to provide him with that degree of

care, skill, and diligence usually exhibited by nursing homes generally in the community, and the

duties set forth in *Bill of Rights for Residents of Long-Term Care Facilities* as set forth in

O.C.G.A. §§ 31-8-104 through 31-8-121, but also included the duty to keep and maintain the full

complement of records required by law.

5.     Pursuant to O.C.G.A. § 9-11-9.1(a), to the extent that statute may even apply to

this action, attached hereto and incorporated herein as Exhibit "A", is the Affidavit of Debi

Luther, R.N., who is qualified as an expert witness on the issues raised in this Complaint.  The

Affidavit specifies at least one negligent act or omission on the part of Defendant, and/or their

staff, and the factual basis for such negligent acts or omissions that caused injury to Donnie

Eugene Kelley. The Affidavit is not inclusive of each act, error, or omission that has been

committed, or may have been committed by the Defendant.  Plaintiff reserves the right to

contend and prove additional acts, errors, and omissions on the part of Defendant that reflects a

departure from the requisite standard of care required by law.

6.     Defendant is subject to the jurisdiction and venue of this Honorable Court.

### *Factual Background*

7.     On or about December 2, 2014, Donnie Eugene Kelley, a 59-year-old male, had a history of HIV, depression, neuropathy, asthma/COPD, bilateral femur fractures, spinal stenosis, and hyperlipidemia. Mr. Kelley was admitted to Life Care Center of Gwinnett from Eastside Medical Center on December 2, 2014. Mr. Kelley had been hospitalized on November 27, 2014, following a fall that resulted in a right ankle trimalleolar fracture. After undergoing ORIF of the right ankle, Mr. Kelley was discharged to Life Care Center of Gwinnett for short term rehabilitation. On admission, an initial skin care assessment documented a red area to Mr. Kelley's lower back spinal area measuring 1.0 x 0.5; reddened buttocks; and an ace wrap and hard cast on his right ankle. Mr. Kelley was assessed to be at risk for developing a pressure ulcer and skin impairments related to occasional incontinence, existing stage I pressure ulcer to lower back, HIV, and limited mobility. The initial care plan for pressure ulcers failed to include the use of pressure relieving devices. Thereafter, on December 11, 2014, Mr. Kelley was assessed with an unstageable pressure ulcer on his right posterior knee measuring 2.0 x 3.0 x. 0.1 cm. The Nutrition Data Collection/ Assessment dated December 15, 2014, noted only that Mr. Kelley had redness to his sacrum. On December 24, 2014, Mr. Kelley had a new unstageable pressure ulcer on his left ischium measuring 2.0 x 2.0 cm. An initial wound care consult at Life Care Center of Gwinnett was scheduled for December 30, 2014. By January 27, 2015, Mr. Kelley's left Ischium wound had deteriorated significantly and was classified as a stage IV wound measuring 9.0 x 7.5 x 2.0. On January 27, 2015, Mr. Kelley was taken to Eastside Medical Center with complaints of increased redness and foul smell coming from his left buttock wound.

Mr. Kelley was diagnosed with cellulitis and discharged back to Life Care Center of Gwinnett with a prescription for Bactrim DS.   Mr. Kelley had an initial appointment with Dr. Kramer at Eastside Medical Center Wound Clinic.  Mr. Kelley's buttock wound measured 50 x 65 x 23 with 23 mm of undermining.  His back wound measured 11 x 9 x 1 with slough.  Mr. Kelley underwent excisional sharp debridement.  On February 4, 2015, Mr. Kelley was admitted to Eastside Medical Center where he underwent hardware removal from his ankle, and wound vac placement.  Mr. Kelley's care plan for pressure ulcers was not updated to include a pressure reduction mattress/seat cushion until March 9, 2015.

Mr. Kelley was readmitted to Eastside Medical Center on March 16, 2015, with complaints of cough, lethargy, hypotension and fever. Mr. Kelley was diagnosed with acute kidney injury, positive influenza A and B; and sacral decubitus ulcer. The consulting physician, Dr. Virmani, noted that Mr. Kelley's wound was a significant source of the infection.  Mr. Kelley passed from this world to the next on March 24, 2015.  Causes of death on his death certificate include cardiopulmonary failure; acute respiratory failure; septic shock; and pneumonia.

### COUNT I

#### *Survival Negligence Claims against Facility Defendants*

8.       Plaintiff alleges and incorporates by reference Paragraphs 1 through 7 above, as if they were fully set forth herein.

9.       By virtue of the provisions of O.C.G.A. §9-2-41, Donnie Eugene Kelly's actions and causes of action for the recovery of damages that resulted from the negligence of the

Defendants prior to his death do not abate by his subsequent death, and survive to his Estate and the Executor thereof.

10.     While a patient at Defendant's facility, Defendant, through their employees, agents and staff, owed to Donnie Eugene Kelley the duty to provide him with that degree of care, skill, and diligence usually exhibited by facilities generally and under similar conditions and like surrounding circumstances.

11.     The standards of care required Defendant to provide these services in a reasonably prudent manner, and, by its acceptance of Donnie Eugene Kelley as a resident, Defendant agreed to do so.

12.     Defendant, through its employees and staff, breached the applicable standard of care in connection with the care and treatment of Donnie Eugene Kelley See generally Exhibit "A." These breaches include, but are not limited to, the following:

a.   Failing to provide adequate and appropriate skin care;

b.   Failing to fully and timely implement adequate and appropriate skin precautions;

c.   Failing to provide timely, adequate, and appropriate treatments;

d.   Failing to provide adequate and appropriate hydration and nutrition;

e.   Failing to fully and timely implement adequate and appropriate precautions to prevent dehydration and/or malnutrition;

f.   Failing to provide proper assessments;

g.   Failing to provide adequate and appropriate Care Plans;

h.   Failing to provide adequate and appropriate documentation and clinical records within the facility;

i.   Failed to provide watchful oversight and protective care of Donnie Eugene Kelley;

j.   Failing to properly supervise, train, and retain staff; and

k. Failing to provide adequate and appropriate custodial care, nutritional needs assessments, and treatments so as to prevent Donnie Eugene Kelley's condition from deteriorating and worsening.

13. Defendant also has vicarious liability for the acts or omissions of all persons or entities under Defendant's control, either direct or indirect, including their respective employees, agents, and consultants.

14. The duty alleged in the immediately preceding paragraphs includes, but is not limited to: proper training and supervision; proper hiring, background and referral checks; and proper retaining and dismissing of employees, agents, consultants and independent contractors.

*Damages*

15. As a direct and proximate result of the negligence of Defendant as described herein, Donnie Eugene Kelley suffered from injuries, disfigurement, physical and mental pain and suffering, disability, physical impairment, inconvenience, and loss of capacity for enjoyment of life. Mr. Kelley also incurred medical expenses related to his injuries, and ultimately died as a result of the injuries sustained while under Defendant's care.

16. Plaintiff, Mary Deann Kelley-Riddle, brings this action in her capacity as Executor of the ESTATE OF DONNIE EUGENE KELLEY, to recover damages for the mental, physical, and emotional pain and suffering of DONNIE EUGENE KELLEY prior to his death, to recover damages for his death, and also to recover medical and funeral expenses. This Defendant, by their failure to provide adequate services, care, and treatment showed willful misconduct, malice, wantonness, and entire want of care that constitutes a conscious indifference to the consequences. Therefore, Plaintiff is entitled to recover, pursuant to O.C.G.A. §51-12-5.1, an award of punitive damages to punish, penalize and deter this Defendant, and others similarly situated, from repeating such conduct.

WHEREFORE, Plaintiff, MARY DEANN KELLEY-RIDDLE, requests trial by jury and judgment against Defendant; an award of compensatory and punitive damages in an amount to be determined by the jury in excess of Ten Thousand ($10,000.00) Dollars; and such costs and attorney fees as may be appropriate under Georgia law; that process issue and be served upon the Defendant according to law; and for such other and further relief as the Court deems just and proper.

## COUNT II
### *Statutory Cause of Action Brought Pursuant to the Provisions of the Bill of Rights for Residents of Long Term Care Facilities against all Defendants*

17.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 7 above, as if each were fully set forth herein.

18.     By virtue of the provisions of O.C.G.A. §9-2-41, Donnie Eugene Kelley's actions and causes of action for the recovery of damages that resulted from the violations of his resident's rights by Defendant prior to his death do not abate by his subsequent death, and survive to his Estate and the Executor thereof.

19.     At all times material hereto, Defendant's nursing home was a "facility," as defined by the provisions of O.C.G.A. § 31-8-102(3), being operated by Defendant, and was subject to the regulation of, and licensure by, the Georgia Department of Human Resources.

20.     At all times material hereto, Donnie Eugene Kelley was a "resident" of Defendant's nursing home facility as defined by the provisions of O.C.G.A. § 31-8-102(5).

21.     By virtue of the provisions of O.C.G.A. §§ 31-8-104 through 31-8-121, Donnie Eugene Kelley was entitled to have certain rights provided for and protected while he was a resident at Defendant's facility. Those resident's rights included, but were not limited to, the following:

**§31-8-108**

(a)     Each resident shall receive care, treatment, and services which are adequate and appropriate. Care, treatment, and services shall be provided as follows:

    (1)     With reasonable care and skill;
    (2)     In compliance with applicable laws and regulations;
    (3)     Without discrimination in the quality of a service based on a source of payment for the service;
    (4)     With respect for the resident's personal dignity and privacy;

(b)     In the provision of care, treatment, and services to the resident by the facility, each resident or guardian shall be entitled to the following:

    (1)     To choose the resident's physician.
    (2)     To participate in the overall planning of the resident's care and treatment. The resident or guardian shall be informed of this right each time a substantial change in the treatment is made;
    ***
    (5)     To have any significant change in the resident's health status reported to persons of his choice by the facility within a reasonable time;

**§31-8-114**

    (6)     …the right to respect and privacy in his medical, personal, and bodily care program.

22.     Donnie Eugene Kelley was aggrieved because Defendant violated or failed to provide for his resident rights while he was a resident at the facility.

23.     By virtue of the provisions of O.C.G.A. § 31-8-126(a), Plaintiff has a separate cause of action against Defendant for each of those injuries and damages, which arose from the violations of, and failures to provide for, Donnie Eugene Kelley's statutorily protected nursing home resident rights.

24.     The Defendant's responsibilities to Donnie Eugene Kelley as outlined above were non-delegable and this Defendant has direct liability for violations of, and failures to provide for, deprivations and infringements of said rights by any person or entity under their control, direct or

indirect, including their employees, agents, consultants, and independent contractors, whether in-house or outside entities, individuals, agencies, or pools, or caused by this Defendant's policies, whether written or unwritten, or common practices.

25.     Notwithstanding the responsibility of Defendant to provide Donnie Eugene Kelley his statutorily mandated and protected nursing home resident rights as set forth herein, Donnie Eugene Kelley was deprived of such rights by the acts or omissions of Defendant, such acts and omissions which include, but are not limited to, the following:

   a. Failing to provide adequate and appropriate skin care;

   b. Failing to fully and timely implement adequate and appropriate skin precautions;

   c. Failing to provide timely, adequate, and appropriate treatments;

   d. Failing to provide adequate and appropriate hydration and nutrition;

   e. Failing to fully and timely implement adequate and appropriate precautions to prevent dehydration and/or malnutrition;

   f. Failing to provide proper assessments;

   g. Failing to provide adequate and appropriate Care Plans;

   h. Failing to provide adequate and appropriate documentation and clinical records within the facility;

   i. Failed to provide watchful oversight and protective care of Donnie Eugene Kelley;

   j. Failing to properly supervise, train, and retain staff;

   k. Failing to provide adequate and appropriate custodial care, nutritional needs assessments, and treatments so as to prevent Donnie Eugene Kelley's condition from deteriorating and worsening;

   l. Failed to protect the privacy and dignity of Donnie Eugene Kelley; and

   m. Failed to provide proper care and services in accordance with the resident's needs.

26.    In addition to Defendant's direct responsibility under O.C.G.A. §§ 31-8-104 through 31-8-121 above, Defendant has vicarious liability for the acts and omissions of all persons or entities under its control, either direct or indirect, including their employees, agents, and consultants for violations of, and failures to provide for, Donnie Eugene Kelley's resident's rights.

27.    The duties alleged in the immediately preceding paragraphs include, but are not limited to, proper training and supervision; proper hiring; background and referral checks; and proper retaining and dismissing of employees, agents, consultants, and independent contractors.

## Damages

28.    As a direct and proximate result of the violations of, and the failures to provide for, Donnie Eugene Kelley's resident rights by this Defendant as described herein, Donnie Eugene Kelley has been aggrieved and suffered injuries, physical and mental pain and suffering, disability, physical impairment, disfigurement, inconvenience, and loss of capacity for enjoyment of life, and ultimately died. Further, his estate incurred medical expenses and funeral expenses related to his rights being violated. Further, this Defendant, by their failure to provide adequate services, care, and treatment showed willful misconduct, malice, wantonness, and entire want of care that constitutes a conscious indifference to the consequences. Therefore, Plaintiff is entitled to recover, pursuant to O.C.G.A. §51-12-5.1, an award of punitive damages to punish, penalize and deter this Defendant, and others similarly situated, from repeating such conduct.

WHEREFORE, Plaintiff, MARY DEANN KELLEY-RIDDLE, as Executor of the ESTATE OF DONNIE EUGENE KELLEY, demands trial by jury and judgment against

Defendant for compensatory damages in an amount to be determined by a jury, and such costs and attorney's fees as may be appropriate under Georgia law.

### COUNT III
### *Wrongful Death Claim Against All Defendants*

29.  Plaintiff alleges and incorporates by reference Paragraphs 1 through 7, and 9 through 14 as if they were fully set forth herein.

30. Plaintiff alleges that the wrongful acts of the Defendants as set out herein caused or contributed to the untimely death of Donnie Eugene Kelley, who died prematurely on March 24, 2015, due to Defendants' negligence as described above.

### *Damages*

31. As a direct and proximate result of the negligence of the Defendants as described herein, Donnie Eugene Kelley died prematurely on March 24, 2015.

32. Plaintiff, MARY DEANN KELLEY-RIDDLE, brings this action on behalf of all those qualified to recover from these Defendants for the full value of the life of Donnie Eugene Kelley, as set forth in the O.C.G.A. § 51-4-2.

WHEREFORE, Plaintiff, MARY DEANN KELLEY-RIDDLE, in her individual and representative capacity on behalf of the Wrongful Death Beneficiaries of Donnie Eugene Kelley, demands trial by jury and judgment against these Defendants for damages for the full value of the life of Donnie Eugene Kelley in an amount to be determined by a jury, and such costs and attorney's fees as may be appropriate under Georgia law.

### JURY DEMAND

Pursuant to O.C.G.A. §15–12–122, Plaintiffs demand a full jury panel of 12 to try this case.

BY COUNSEL

LAW OFFICES OF DANIEL W. COTTER, P.C.

_____

Daniel W. Cotter
Georgia Bar Number 189599
One Decatur Town Center
150 E. Ponce de Leon Avenue, Suite 225
910 Church Street, Suite 100
Decatur, GA  30030
(404) 377-5775


AND

BROOKS, LEBOEUF, BENNETT, FOSTER, &
GWARTNEY, P.A.

_____

Scott E. Gwartney
Georgia Bar Number 315955
909 East Park Avenue
Tallahassee, FL  32301
(850) 222-2000

STATE OF FLORIDA
COUNTY OF OKALOOSA

FILED IN OFFICE
CLERK STATE COURT
GWINNETT COUNTY, GA

2016 JUL 20  PM 3: 57

RICHARD ALEXANDER, CLERK

## AFFIDAVIT OF DEBI LUTHER, RN, NHA

COMES NOW before me, an officer authorized to administer oaths, **DEBI LUTHER,** RN, NHA, who having been duly sworn, deposes and says:

**16  C  04249-3**

1.

I am over the age of twenty-one (21) years and am competent to testify as an expert witness in this action for professional malpractice arising out of the care and treatment rendered to **DONNIE KELLEY by LIFE CARE CENTER OF GWINNETT** from December 2, 2014 through March 16, 2015.

2.

I am a Registered Nurse licensed and in good standing in the state of Florida having received my RN degree and initial licensure in 1983. I received my Nursing Home Administrator (NHA) license in 1992. I received my National Certification as an Administrator in 1996. I have been actively practicing as a registered nurse or nursing home administrator since 1983, and have worked continuously in the nursing home setting since 1987 (except for a period of less than 2 years when I was working with hospice and in the Operating Room). Attached as Exhibit "A" to this affidavit is an accurate and true copy of my curriculum vitae giving further information as to my training and experience.

3.

This Affidavit is given pursuant to the provisions of O.C.G.A. § 9-11-9.1, which requires that at least one negligent act or omission be specified for each named Defendant in order to file a Complaint with the Court. This Affidavit is not intended to encompass all of the opinions present held by me concerning the negligent act(s) or omission(s) of **LIFE CARE CENTER OF GWINNETT** in the care and treatment of **DONNIE KELLEY** during his residence from December 2, 2014 through March 16, 2015. As discovery progresses and additional information becomes available, I reserve the right to modify, alter or form additional opinions.

4.

I am qualified to testify in this case regarding the acceptable standard of conduct of the nursing and support staff employed by **LIFE CARE CENTER OF GWINNETT,** whose

**EXHIBIT 'A'**

conduct is identified herein because at the time the acts or omissions concerning **DONNIE KELLEY** occurred:

(a)     Since my initial licensure in 1983, I have continuously been licensed by the appropriate regulatory agency to practice as a licensed Registered Nurse in the State of Florida by the Florida Board of Nursing.

(b)     I had then, and continue to have, actual professional knowledge and experience in the field of long term care nursing, the area of practice in which the opinions are to be given, as the result of having been regularly engaged in the active practice of Nursing and Nursing Home Administration, in the Long Term Care setting since 1988 (except for a period of less than 2 years when I worked as a staff RN in the Operating Room and with Hospice);

(c)     I had then, and continue to have, actual professional knowledge in the field of long term care nursing care, the area of practice in which the opinions are to be given, as the result of having been regularly engaged as an R.N. supervisor, DON, and NHA, responsible for managing the nursing home staff and ultimately responsible for the needs of the nursing home residents.  Because of my nursing background and training, my knowledge of the rules and regulations which govern Long Term Care facilities throughout the United States, and the State of Georgia, including Grady County, I know the standards of care required in a Long Term Care setting.  I am specifically knowledgeable of the applicable standards of care required for the care and treatment of **DONNIE KELLEY** by **LIFE CARE CENTER OF GWINNETT** during his residency, based upon the qualifications as set forth above.  **LIFE CARE CENTER OF GWINNETT** is a skilled nursing facility and the breaches of care I identify in this affidavit arise from the standards of care I know as a result of my education, training, background and experience as set forth above.

5.

As used within the context of this Affidavit, the term "standard of care" refers to that degree of care, skill and diligence ordinarily employed by members of the health care profession generally under the same or similar conditions and like surrounding circumstances.

6.

This Affidavit is based on my knowledge, education, training and experience as a licensed professional nurse and as a nursing home administrator, my knowledge and familiarity with the standard of care exercised by health care providers, generally, and those who provide

2

care of a patient in the nursing home setting, as reflected in the medical records of **DONNIE KELLEY** hereinafter referenced, which I have reviewed; and the factual situations set forth in said records as described in this Affidavit.

7.

In at least three of the five years preceding March 16, 2015, I provided care to adult patients in the nursing home environment and facilities such as the care provided by **LIFE CARE CENTER OF GWINNETT,** with sufficient frequency to be, and I am, knowledgeable in the care of such patients.

8.

To date, I have reviewed the following materials related to **DONNIE KELLEY:**

- Life Care Center of Gwinnett
- Eastside Medical Center
- Photographs
- Death Certificate

9.

According to my review of the medical records referenced above, the clinical course of **DONNIE KELLEY,** during the period of December 2, 2014 through March 16, 2015, was as follows:

Donnie Kelley, age 59, had a history of HIV, depression, neuropathy, asthma/COPD, bilateral femur fractures, spinal stenosis, and hyperlipidemia. Mr. Kelley was admitted to Life Care Center of Gwinnett from Eastside Medical Center on December 2, 2014. Mr. Kelley had been hospitalized on November 27, 2014, following a fall that resulted in a right ankle trimalleolar fracture. After undergoing ORIF of the right ankle, Mr. Kelley was discharged to Life Care Center of Gwinnett for short term rehabilitation. On admission, an initial skin care assessment documented a red area to Mr. Kelley's lower back spinal area measuring 1.0 x 0.5; reddened buttocks; and an ace wrap and hard cast on his right ankle. Mr. Kelley was assessed to be at risk for developing a pressure ulcer and skin impairments related to occasional incontinence, existing stage I pressure ulcer to lower back, HIV, and limited mobility. The initial care plan for pressure ulcers failed to include the use of pressure relieving devices. Thereafter, on December 11, 2014, Mr. Kelley was assessed with an unstageable pressure ulcer on his right posterior knee measuring 2.0 x 3.0 x. 0.1 cm. The Nutrition Data Collection/ Assessment dated December 15, 2014, noted only that Mr. Kelley had redness to his sacrum. On

December 24, 2014, Mr. Kelley had a new unstageable pressure ulcer on his left ischium measuring 2.0 x 2.0 cm.  An initial wound care consult at Life Care Center of Gwinnett was scheduled for December 30, 2014.  By January 27, 2015, Mr. Kelley's left Ischium wound had deteriorated significantly and was classified as a stage IV wound measuring 9.0 x 7.5 x 2.0.  On January 27, 2015, Mr. Kelley was taken to Eastside Medical Center with complaints of increased redness and foul smell coming from his left buttock wound.  Mr. Kelley was diagnosed with cellulitis and discharged back to Life Care Center of Gwinnett with a prescription for Bactrim DS.  Mr. Kelley had an initial appointment with Dr. Kramer at Eastside Medical Center Wound Clinic.  Mr. Kelley's buttock wound measured 50 x 65 x 23 with 23 mm of undermining.  His back wound measured 11 x 9 x 1 with slough.   Mr. Kelley underwent excisional sharp debridement.  On February 4, 2015, Mr. Kelley was admitted to Eastside Medical Center where he underwent hardware removal from his ankle, and wound vac placement.  Mr. Kelley's care plan for pressure ulcers was not updated to include a pressure reduction mattress/seat cushion until March 9, 2015.

Mr. Kelley was readmitted to Eastside Medical Center on March 16, 2015, with complaints of cough, lethargy, hypotension and fever.  Mr. Kelley was diagnosed with acute kidney injury, positive influenza A and B; and sacral decubitus.  The consulting physician, Dr. Virmani, noted that Mr. Kelley's wound was a significant source of the infection.  Mr. Kelley died on 3/24/15.   On March 18, 2015, Causes of death on his death certificate include cardiopulmonary failure; acute respiratory failure; septic shock; and pneumonia.

10.

In order to properly care for DONNIE KELLEY, LIFE CARE CENTER OF GWINNETT was required by the applicable standards of care in the industry to maintain careful supervision of DONNIE KELLEY in order to prevent the development and/or worsening of pressure sores; to utilize proper pressure reduction techniques to prevent the development and/or or worsening of pressure ulcers; to diagnose and treat any pressure ulcers which did develop; to accurately assess and treat skin conditions once they occurred; and to provide an adequate and appropriate Comprehensive Care Plan that describes the services to be furnished to attain or maintain the resident's highest practicable physical, mental, and psychosocial well-being.  The

4

standards of care required LIFE CARE CENTER OF GWINNETT to provide these services in a reasonably prudent manner, and by their acceptance of DONNIE KELLEY as a resident, LIFE CARE CENTER OF GWINNETT agreed to do so.

11.

Based upon my review of the medical records referenced herein and upon my education, knowledge, training and experience as a health care provider, as well as my familiarity with the applicable standard of care ordinarily exercised by health care providers generally under the same or similar conditions and like surrounding circumstances, it is my opinion that the nursing staff employed by **LIFE CARE CENTER OF GWINNETT** departed from the standards of care required in the care and treatment provided to **DONNIE KELLEY** during his residency that ended on March 16, 2015, as required of Long Term Care facilities in Georgia generally, and specifically in Gwinnett County. Such conduct by the nursing home violates the federal and state regulations applicable to the nursing facility which help establish the standards of care, in particular those set forth in 42 CFR § 483.0 *et seq.* Use of the term "LIFE CARE CENTER OF GWINNETT," is intended to refer interchangeably to any legal entity owning, operating, or managing this facility during the period of Donnie Kelley's residency. The negligence and departures from the standards of care required of LIFE CARE CENTER OF GWINNETT specifically included, but were not limited to, the following specific described acts or omissions. Specifically, **LIFE CARE CENTER OF GWINNETT** and nursing staff employed by **LIFE CARE CENTER OF GWINNETT** violated the standards of care applicable to them and federal regulations applicable to the facility by:

- failing to fully and timely implement adequate and appropriate skin precautions so as to prevent skin breakdown and/or the worsening of skin breakdown (§483.25).
- failing to provide timely, adequate and appropriate treatment to prevent the development and worsening of decubitus ulcers; (§483.25).
- failing to provide proper assessments and an adequate and appropriate Comprehensive Care Plan that describes the services to be furnished to attain or maintain the resident's highest practicable physical, mental, and psychosocial well-being (§483.20).

5

Further, based on my review of the records listed above, and based upon my background, training, experience, and knowledge in the field, it is my opinion that **LIFE CARE CENTER OF GWINNETT,** and/or any other legal entity owning, operating, or managing this facility during **Donnie Kelley's** residency, was negligent and failed to exercise the degree of care, skill and diligence generally exercised by nursing homes under the same or similar circumstances in its care and treatment of **Donnie Kelley** in the following ways.

(A)     *The Failure of* **LIFE CARE CENTER OF GWINNETT** *to Prevent the Worsening and Progression of Pressure Ulcers.* **LIFE CARE CENTER OF GWINNETT** was required by the standards of care to develop a protocol for Donnie Kelley that would prevent the development and worsening of pressure sores and to provide appropriate treatment to promote the healing and prevent infection of any pressure sores. This protocol should have included nutritional intervention to prevent dehydration or malnutrition, reasonable and necessary pressure reduction techniques, and careful, regular monitoring of Mr. Kelley's skin. Mr. Kelley's skin care and nutritional care plans were clearly inadequate, as Mr. Kelley's entered the facility with reddened buttocks and a stage I pressure ulcer on his lower back. Mr. Kelley developed multiple wounds, and his sacral wound progressed to a stage IV wound which was a significant source of infection.

(B)     *The failure of* **LIFE CARE CENTER OF GWINNETT** *to provide an adequate and appropriate Comprehensive Care Plan that describes the services to be furnished to attain or maintain the resident's highest practicable physical, mental, and psychosocial well-being.* **LIFE CARE CENTER OF GWINNETT** failed to implement and/or follow an adequate Care Plan, including the timely implementation of a pressure reduction mattress/seat cushion and appropriate reassessment following the initial discovery of Mr. Kelley's decubitus ulcers on December 11, 2014, and December 24, 2014.

12.

It is my opinion that the departures from the standards of care by **LIFE CARE CENTER OF GWINNETT** and its agents and employees as described above were the direct and proximate cause of harm and injury to **Donnie Kelley.**

13.

All of the opinions stated in this affidavit are expressed within a reasonable degree of nursing and professional probability, and are based upon my education, background and

6

experience, upon my review of the records listed herein, and upon my knowledge of the standards of care applicable to skilled nursing homes and Long Term Care facilities, such standards being applicable to facilities throughout the country.

FURTHER AFFIANT SAYETH NOT.

DEBI LUTHER, RN, CNHA

BEFORE ME, the undersigned authority, personally appeared DEBI LUTHER, who is personally known to me or who produced _Personally Known_ as identification, and who did take an oath, and deposes and says that the foregoing is true and correct in all respects.

SWORN TO AND SUBSCRIBED before me, this 15th day of _July_, 2016.

Notary Public

My commission expires: 11-14-17

KIMBERLY CARR BOWMAN
Commission # FF 040405
Expires November 14, 2017
Bonded Thru Troy Fain Insurance 800-385-7019

7

- 419 Riverchase Blvd     Email debilovesfsu@co
- Crestview, Fl     32536     x.net
  Cell 850-758-9192

# Debi Luther

**Summary of qualifications**

- Twenty seven years of experience as an RN, DON, Director of QA or Administrator
- Six years experience in acute care; twenty years experience in LTC

**Professional experience**

4/11 – present (PRN position)   Silvercrest Manor          Crestview, Fl
**Charge Nurse**

- Responsible for the direct nursing care of 30 residents to include assessments, care plan follow through and revision as well as delivery of treatments and medications as ordered
- Responsible for supervision of LPNs, CNAs and ancillary staff

3/10 - present          Emerald Coast Hospice          Crestview, Fl
**Branch Director**

- Responsible for the operation of a Hospice Branch with an emphasis on providing services in long term care and SNFs
- Cross trained Hospice and nursing facility staff to ensure continuity of services as developed in the resident's plan of care
- Assessed and treated patients per physician orders and plan of care
- Hired, trained, assigned and supervised clinical staff
- Collaborated with physicians and other disciplines to ensure appropriate care was offered to the terminally ill patient and family
- Functioned as a case manager for SNF, ALF and home care

7/08 – 3/10          Southern Oaks          Pensacola, Fl
**Administrator**

- Responsible for the operation of a 210 bed SNF as the Administrator
- Responsible for the multimillion dollar renovation of the facility following a CHOW
- Responsible for ensuring regulatory improvement and compliance

3/02 – 7/08          Emerald Coast Center          Ft. Walton Beach, Fl
**Administrator/DON/Nurse Consultant/Weekend House Supervisor/Staff RN**

- Responsible for the operation of a 120 bed SNF as the Administrator
- Responsible for the staffing and resident care during weekend hours as well as direct care assignments
- Assisting sister facilities as Interim DON/Administrator
- Providing direct patient care as a staff nurse with all associated responsibilities

**EXHIBIT 'A'**

7/01 – 12/03    Emerald Pointe     Niceville, Fl
**Administrator**

- Responsible for the daily operation of a 90 bed SNF
- Increased census by 35% over 29 months,
- Met budgetary goals by controlling expenses and increasing revenues,

9/00 – 7/01  Ft. Walton Beach Medical Center  Ft. Walton Beach, Fl
**Staff RN/Operating Room**

- Responsible for surgical patients in the operating room
- Assisted anesthesiologists and surgeons with intra-operative care

Assessed patients and developed and implemented plans of

9/98 – 8/00    Interim Staffing Agency   Tallahassee, FL
**RN Agency Nurse**

- Worked PT as an agency RN at area SNFs when staffing was needed
- Performed as a floor nurse or supervisor based on facility specific needs

Provided leadership and direction for LPNs and CNAs

1/96 – 9/98  Cross Creek Health Care Center  Pensacola, Fl
**Administrator**

- Responsible for leading the facility from a state imposed moratorium to a superior rating with JCAHO accreditation
- Exceeded budget, census, HOL, supplies, AR and PPPD goals

Responsible for reducing employee turnover from 75% to 3%

5/88 – 1/96    Advocare Inc.    Pensacola, Fl
**Charge Nurse, Director of Nursing, Administrator, Director of QA**

- Worked in multiple positions within the company while advancing
- Responsible for all duties inherent in position based on job title
- Hired and trained DONs and Administrators at nine locations

**Education**  1998 – 2000   Florida State University  Tallahassee, Fl
       1996 – 1998  University of West Florida  Pensacola, Fl
       1981 – 1983   Pensacola Jr. College  Pensacola, Fl

- Associate of Science in Nursing 1983
- Board certification as a Nursing Home Administrator 1992
- National Certification as an Administrator (AHCA 1996)

**Licenses**  1983:FL RN 1565002, 1992:FL NHA 3303, 2013:Commonwealth of VA
      RN 0001248486

**References**  Available upon request

## IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

MARY DEAN KELLEY-RIDDLE, as )
Executor of the ESTATE of DONNIE )
EUGENE KELLEY, )
                              )
   Plaintiff, )
                              )
v. )
                              )
LIFE CARE CENTERS OF AMERICA, INC., )
                              )
   Defendant. )

CIVIL ACTION NO.
16-C-04249-3

RICHARD ALEXANDER, CLERK

FILED IN OFFICE
CLERK STATE COURT
2016 AUG 19  PH 3:2
COPY

## SPECIAL APPEARANCE ANSWER AND DEFENSES OF DEFENDANT LIFE CARE CENTERS OF AMERICA, INC. TO PLAINTIFF'S COMPLAINT FOR DAMAGES

**COMES NOW** Life Care Centers of America, Inc., hereinafter "Defendant," named Defendant in the above-styled action, and, without waiving its rights to seek arbitration of this matter, files its Special Appearance Answer and Defenses to Plaintiff's Complaint for Damages, hereinafter "Complaint," showing the Court as follows:

### FIRST DEFENSE

Plaintiff's Complaint is or may be barred by the execution of the "Voluntary Agreement for Arbitration".

### SECOND DEFENSE

Plaintiff's claim is barred by Plaintiff's failure to name proper and/or necessary parties.

### THIRD DEFENSE

This action is or may be barred, in whole or in part, by Plaintiff's failure to comply with the requirements of O.C.G.A. §§ 9-11-9.1, 24-7-702, and/or 24-7-703, and Defendant reserves its rights to file a motion to dismiss pursuant to those statutes.

### FOURTH DEFENSE

Plaintiff's Complaint fails to state a claim against Defendant upon which relief may be granted.

### FIFTH DEFENSE

Plaintiff's Complaint fails to state a claim against Defendant for professional negligence upon which relief may be granted.

### SIXTH DEFENSE

Plaintiff's Complaint fails to state a claim against Defendant for ordinary negligence upon which relief may be granted.

### SEVENTH DEFENSE

Plaintiff's Complaint fails to state a claim against Defendant for breach of contract upon which relief can be granted.

### EIGHTH DEFENSE

Plaintiffs' Complaint fails to state a claim for violations of Federal law, Federal regulations, Georgia law and/or Georgia regulations upon which relief may be granted.

### NINTH DEFENSE

Plaintiff's Complaint fails to state a claim against Defendant for negligence *per se* secondary to violations of Federal regulations and/or State regulations upon which relief may be granted.

### TENTH DEFENSE

Plaintiff's Complaint fails to state a claim against Defendant for violations of the Georgia Bill of Rights for Residents of Long-Term Care Facilities upon which relief may be granted.

### ELEVENTH DEFENSE

Plaintiff's Complaint fails to state a claim against Defendant for breach of fiduciary duty upon which relief may be granted.

### TWELFTH DEFENSE

Plaintiff's Complaint fails to state a claim against Defendant for imputed and/or vicarious liability and/or *respondeat superior* upon which relief can be granted.

### THIRTEENTH DEFENSE

Plaintiff's Complaint fails to state a claim against Defendant for negligent hiring, supervising and/or retention upon which relief may be granted.

### FOURTEENTH DEFENSE

Plaintiff's Complaint fails to state a claim for Defendant's principal-agent relationships upon which relief may be granted.

### FIFTEENTH DEFENSE

Plaintiff's Complaint fails to state a claim against Defendant for personal injuries, mental and physical pain and suffering and medical expenses upon which relief may be granted.

### SIXTEENTH DEFENSE

Plaintiff's Complaint fails to state a claim against Defendant for attorney's fees and/or the expenses of litigation upon which relief may be granted.

### SEVENTEENTH DEFENSE

Plaintiff's Complaint fails to state a claim against Defendant for punitive damages upon which relief can be granted.

## EIGHTEENTH DEFENSE

Plaintiff is not entitled to collect an award of punitive damages from Defendant because an award of such damages could violate the due process, equal protection and excessive fees clauses of the Georgia and United States constitutions.

## NINETEENTH DEFENSE

To the extent Plaintiff is seeking punitive damages through any inference of "willful misconduct," "conscious indifference," or other similar phrases descriptive of punitive damages in the Complaint, in the event that an excessive award of punitive damages is made in this case, and Defendant vigorously denies that Plaintiff is entitled to any punitive damages at all, said award would violate Article One, Section One, Paragraph One of the Constitution of the State of Georgia and the Fifth and Fourteenth Amendments of the Constitution of the United States in that such award would be so unrelated to the evidence as to be arbitrary and capricious in violation of Defendant's rights to due process under the law.

## TWENTIETH DEFENSE

To the extent that the injuries and damages alleged in Plaintiff's Complaint have been or may have been directly or proximately caused by the negligence of another person or persons over whom Defendant had no influence or control or were the result of a separate event, it cannot legally be held responsible for same.

## TWENTY-FIRST DEFENSE

Defendant is not liable to Plaintiff.  Any injury or damage that Plaintiff may have experienced was solely and proximately the result of acts and/or omissions of other party(ies), individual(s) and/or entity(ies), including but not limited to Mr. Kelley's diagnosed or undiagnosed pre-existing medical conditions.

## TWENTY-SECOND DEFENSE

Defendant is not liable to Plaintiff, as it did not commit any acts or omissions of negligence and did not fail to meet the standard of care required by law.

## TWENTY-THIRD DEFENSE

Defendant is not liable to Plaintiff in any amount because any alleged negligence of Defendant, which negligence Defendant specifically denies, did not cause or contribute to the injuries alleged by Plaintiff.

## TWENTY-FOURTH DEFENSE

This action is barred, in whole or in part, as no alleged act or omission of Defendant was the proximate cause of any of Plaintiff's alleged injuries or damages.

## TWENTY-FIFTH DEFENSE

To the extent as may be shown by the evidence through discovery, Defendant asserts the affirmative defenses of assumption of the risk, contributory/comparative negligence, failure of Plaintiff to exercise ordinary care for her own safety, failure of Plaintiff to avoid consequences and/or Plaintiff's failure to mitigate damages.

## TWENTY-SIXTH DEFENSE

Jurisdiction and/or venue is or may be improper as to Defendant.

## TWENTY-SEVENTH DEFENSE

To the extent shown through discovery, Defendant raises all those affirmative defenses set forth in O.C.G.A. §§ 9-11-8 (c) and 9-11-12 (b).

## TWENTY-EIGHTH DEFENSE

To the extent Plaintiff is seeking punitive damages through specific language or any inference of "willful misconduct," "conscious indifference" or other similar phrases descriptive

of punitive damages in the Complaint, Plaintiff's demand for punitive damages against Defendant fails to state a claim upon which relief can be granted pursuant to O.C.G.A. § 51-12-5.1 (b).

### TWENTY-NINTH DEFENSE

The claim for punitive damages asserted by Plaintiff cannot be sustained under Georgia law as the standards for determination of liability for and the amount of punitive damages fails to give Defendant prior notice of the conduct for which punitive damages may be imposed and are void for vagueness in violation of its due process rights guaranteed by the Fourteenth Amendment of the United States Constitution and Article I, Section I, Paragraph 1 of the Constitution of the State of Georgia.

### THIRTIETH DEFENSE

Plaintiff is not allowed to recover punitive damages against Defendant, and the claim made for the same should be dismissed.  Folsom v. Kawasaki; Motors Corp., 509 F. Supp. 2d 1364 (2007 M.D. Georgia); Truelove v. Wilson, 159 Ga. App. 906 (1981).

### THIRTY-FIRST DEFENSE

For its Thirty-First Defense, Defendant answers the specific allegations of Plaintiff's Complaint as follows:

***Preliminary, Venue, and Jurisdiction Allegations***

1.

Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 1 of Plaintiff's Complaint and, therefore, said allegations are denied. By way of further response, Defendant specifically denies that Plaintiff is entitled to any recovery against Defendant under any theory of liability.

6

2.

Defendant admits that it is, and was, during the residence of Mr. Kelley, a Tennessee corporation registered to transact business in the State of Georgia, and further admits that it may be served through its registered agent, Corporation Service Company, at 40 Technology Parkway, South, Suite 300, Norcross, Georgia 30092. Further, Defendant admits that it is, and was, during the residency of Mr. Kelley, the licensed operator of the nursing home business known as Life Care Center of Gwinnett. Defendant denies the remaining allegations contained in Paragraph 2 of Plaintiff's Complaint.

3.

Defendant admits the allegations contained in Paragraph 3 of Plaintiff's Complaint.

4.

Defendant states that the Bill of Rights for Residents of Long Term Care Facilities speaks for itself. Defendant denies, to the extent the allegations in Paragraph 4 of Plaintiff's Complaint misstate, misinterpret, and/or misrepresent the duties imposed under Georgia law. Defendant denies the remaining allegations contained in Paragraph 4 of Plaintiff's Complaint and the assumptions upon which they are based.

5.

Defendant admits that the Affidavit of Debi Luther, RN is attached to Plaintiff's Complaint as Exhibit "A". Defendant denies that the Affidavit of Debi Luther, RN meets the requirements of O.C.G.A. §§ 9-11-9.1, 24-7-702 and/or 24-7-703. Defendant further denies the remaining allegations contained in Paragraph 5, as well as the assumptions upon which they are based, and reserves its right to file an appropriate motion to dismiss and/or disqualify Plaintiff's affiant pursuant to O.C.G.A. §§ 9-11-9.1, 24-7-702 and/or 24-7-703.

6.

Defendant admits the allegations contained in Paragraph 6 of Plaintiff's Complaint.

### Factual Background

7.

Defendant states that on or about December 2, 2014, Donnie Eugene Kelley, a 59- year old male, admitted to Life Care Center of Gwinnett ("LCCG") from Eastside Medical Center. Defendant states the medical records speak for themselves. Defendant denies the allegations contained in Paragraph 7 of Plaintiff's Complaint to the extent they are inconsistent with the records. Defendant is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in Paragraph 7 of Plaintiff's Complaint and, therefore, said allegations are denied.

### COUNT I
### Survival Negligence Claims Against Facility Defendants

8.

Defendant restates and incorporates herein by reference its answers and defenses to the allegations contained in Paragraphs 1 through 7 of Plaintiff's Complaint above as though fully set forth herein.

9.

Defendant denies the allegations contained in Paragraph 9 of Plaintiff's Complaint and the assumptions upon which they are based. By way of further response, Defendant denies that Plaintiff is entitled to recover against Defendant under any theory of liability.

10.

Defendant admits that LCCG was required to comply with the applicable standard of care in connection with the care and treatment of Mr. Donnie Kelley, and further states that it

8

complied with that standard. Defendant denies the remaining allegations contained in Paragraph 10 of Plaintiff's Complaint, as well as the assumptions upon which they are based.

11.

Defendant admits that LCCG was required to comply with the applicable standard of care in connection with the care and treatment of Mr. Donnie Kelley, and further states that it complied with that standard. Defendant denies the remaining allegations contained in Paragraph 11 of Plaintiff's Complaint, as well as the assumptions upon which they are based.

12.

Defendant denies the allegations contained in Paragraph 12 of Plaintiff's Complaint, including subparts (a) through (k), as well as the assumptions upon which they are based.

13.

Defendant denies the allegations contained in Paragraph 13 of Plaintiff's Complaint and the assumptions upon which they are based.

14.

Defendant denies the allegations contained in Paragraph 14 of Plaintiff's Complaint and the assumptions upon which they are based.

***Damages***

15.

Defendant denies the allegations contained in Paragraph 15 of Plaintiff's Complaint and the assumptions upon which they are based.

16.

Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in the first sentence of Paragraph 16 of Plaintiff's Complaint and,

therefore, said allegations are denied. All remaining allegations contained in Paragraph 16 of Plaintiff's Complaint are denied.

## COUNT II
### Statutory Cause of Action Brought Pursuant to the Provisions of the Bill of Rights for Residents of Long Term Care Facilities Against all Defendants

17.

Defendant restates and incorporates herein by reference its responses to the allegations contained in Paragraphs 1 through 16 of Plaintiff's Complaint above as though fully set forth herein.

18.

Defendant denies the allegations contained in Paragraph 18 of Plaintiff's Complaint and the assumptions upon which they are based.

19.

Defendant admits that it was the licensed operator of LCCG and further states that the Department of Human Resources regulations speak for themselves. Defendant denies the remaining allegations contained in Paragraph 19 of Plaintiff's Complaint and the assumptions upon which they are based.

20.

Defendant admits the allegations contained in Paragraph 20 of Plaintiff's Complaint.

21.

Paragraph 21 of Plaintiff's Complaint contains legal conclusions. To the extent that a response is required, Defendant states that the Bill of Rights for Residents of Long Term Care Facilities speaks for itself. Defendant denies the remaining allegations contained in Paragraph 21 of Plaintiff's Complaint to the extent they misstate, misinterpret and/or misrepresent the

provisions referenced. Defendant further states that LCCG complied with the applicable standard of care in connection with its care and treatment of Mr. Donnie Kelley and denies any violation of the Bill of Rights for Residents of Long Term Care Facilities and/or any ability for Plaintiff to recover against Defendant pursuant to the Bill of Rights for Residents of Long Term Care Facilities.

22.

Defendant denies the allegations contained in Paragraph 22 of Plaintiff's Complaint.

23.

Defendant denies the allegations contained in Paragraph 23 of Plaintiff's Complaint and the assumptions upon which they are based.  By way of further response, Defendant denies that Plaintiff is entitled to recover against Defendant under any theory of recovery.

24.

Defendant denies the allegations contained in Paragraph 24 of Plaintiff's Complaint and the assumptions upon which they are based.

25.

Defendant denies the allegations contained in Paragraph 25 of Plaintiff's Complaint, including subparts (a) through (m), and the assumptions upon which they are based.  By way of further response, Defendant denies that Plaintiff is entitled to recover against Defendant under any theory of recovery.

26.

Defendant denies the allegations contained in Paragraph 26 of Plaintiff's Complaint and the assumptions upon which they are based.

27.

Defendant denies the allegations contained in Paragraph 27 of Plaintiff's Complaint, and the assumptions upon which they are based.

### Damages

28.

Defendant denies the allegations contained in Paragraph 28 of Plaintiff's Complaint, and the assumptions upon which they are based.

### COUNT III
### Wrongful Death Claim Against all Defendants

29.

Defendant restates and incorporates herein by reference its answers and defenses to the allegations contained in Paragraphs 1 through 28 of Plaintiff's Complaint above as though fully set forth herein.

30.

Defendant denies the allegations contained in Paragraph 30 of Plaintiff's Complaint, and the assumptions upon which they are based.  By way of further response, Defendant denies that Plaintiff is entitled to recover against Defendant under any theory of recovery.

### Damages

31.

Defendant denies the allegations contained in Paragraph 31 of Plaintiff's Complaint and the assumptions upon which they are based.

32.

Defendant denies the allegations contained in Paragraph 32 of Plaintiff's Complaint, and the assumptions upon which they are based.  By way of further response, Defendant denies that Plaintiff is entitled to recover against Defendant under any theory of recovery.

33.

To the extent Plaintiff's "WHEREFORE" clause and prayer for relief may be read to require a response, Defendant denies Plaintiff's entitlement to any recovery against Defendant under any theory of liability for any amount.

34.

Any allegation of Plaintiff's Complaint not specifically admitted herein is denied.

**WHEREFORE**, Defendant Life Care Centers of America, Inc., having made its Special Appearance Answer and Defenses to Plaintiff's Complaint for Damages, hereby requests judgment in its favor, that it be dismissed from this action with all costs cast against the Plaintiff and that it be granted such other relief as this Court deems justice to demand.

**IN THE EVENT THIS MATTER IS NOT DISMISSED: DEFENDANT LIFE CARE CENTERS OF AMERICA, INC. HEREBY DEMANDS TRIAL BY A JURY OF TWELVE.**

This 19th day of August, 2016.

*(Signature on the Following Page)*

Respectfully submitted,

**HANKS BROOKES, LLC**

CRAIG A. BROOKES
Georgia Bar No. 084476
JERALD R. HANKS
Georgia Bar No. 323470
CHAR LEIGH ROBERTS
Georgia Bar No. 504475
*Attorneys for Defendant*

Two Securities Centre
3500 Piedmont Road, N.E., Suite 320
Atlanta, Georgia 30305
(404) 892-1991 (P)
(404) 892-8190 (F)
cbrookes@hanksbrookes.com
jrhanks@hanksbrookes.com
clroberts@hanksbrookes.com

14

## IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

MARY DEAN KELLEY-RIDDLE, as )
Executor of the ESTATE of DONNIE )
EUGENE KELLEY, )                                     CIVIL ACTION NO.
                               )                  16-C-04249-3
    Plaintiff, )
                               )
v. )
                               )
LIFE CARE CENTERS OF AMERICA, INC., )
                               )
    Defendant. )

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have this day served a copy of *SPECIAL APPEARANCE ANSWER AND DEFENSES OF DEFENDANT LIFE CARE CENTERS OF AMERICA, INC. TO PLAINTIFF'S COMPLAINT FOR DAMAGES* upon all parties in this matter by depositing a true and correct copy of same in the U.S. Mail, proper postage prepaid, addressed as follows:

Daniel W. Cotter
LAW OFFICERS OF DANIEL W. COTTER, P.C.
One Decatur Town Center
150 E. Ponce de Leon Avenue, Suite 225
Decatur, Georgia 30030

Scott E. Gwartney
BROOKES, LEBOEUF, BENNETT, FOSTER, & GWARTNEY, P.A.
909 East Park Avenue
Tallahassee, Florida 32301

This 19th day of August, 2016.

Respectfully submitted,

**HANKS BROOKES, LLC**

CHAR LEIGH ROBERTS
Georgia Bar No. 504475
*Attorney for Defendant*

Two Securities Centre
3500 Piedmont Road, N.E., Suite 320
Atlanta, Georgia 30305
(404) 892-1991 (P)
(404) 892-8190 (F)
clroberts@hanksbrookes.com

## CERTIFICATE OF SERVICE

I herby certify that I have served a copy of the foregoing pleading upon all counsel and/or party of record, by United States mail, postage prepaid, and properly addressed as follows:

Daniel W. Cotter
LAW OFFICERS OF DANIEL W. COTTER, P.C.
One Decatur Town Center
150 E. Ponce de Leon Avenue, Suite 225
Decatur, Georgia 30030

Scott E. Gwartney
BROOKES, LEBOEUF, BENNETT, FOSTER,
& GWARTNEY, P.A.
909 East Park Avenue
Tallahassee, Florida 32301

This _____ day of August, 2016.

Respectfully submitted,

**HANKS BROOKES, LLC**

CRAIG A. BROOKES
Georgia Bar No. 084476
*Attorney for Defendant Life Care
Centers of America, Inc.*

Two Securities Centre
3500 Piedmont Road, N.E., Suite 320
Atlanta, Georgia 30305
(404) 892-1991 (P)
(404) 892-8190 (F)
cbrookes@hanksbrookes.com

## CERTIFICATE OF FONT

Pursuant to N.D. Ga. Local Rules 5.1(B) and 7.1(D), I hereby certify that this document is submitted in Times New Roman 14 point type.

Respectfully submitted,

**HANKS BROOKES, LLC**

CRAIG A. BROOKES
Georgia Bar No. 084476
*Attorney for Defendant Life Care*
*Centers of America, Inc.*

Two Securities Centre
3500 Piedmont Road, N.E., Suite 320
Atlanta, Georgia 30305
(404) 892-1991 (P)
(404) 892-8190 (F)
cbrookes@hanksbrookes.com